## Tunkhannock Ice Company *v.* Franklin, Appellant.

*Contract—Evidence—Parol stipulations—Question for jury.*

Plaintiff and defendant entered into a written contract whereby the former agreed " to sell to the said party of the second part, all now unsold, being about twelve thousand tons of ice." When the contract was made the ice was stored in a mass of many tons. A sale or sales of some of it had been made. This was known by defendant, although there was controversy as to the number of precedent sales. Deliveries were made from time to time and defendant received 8,650 tons. At the time of final delivery there was due to plaintiff payments for some of the earlier shipments. For the amount due the plaintiffs sued. Defendant claimed to set off damages for failure to deliver 12,000 tons by reason of which ice had to be bought from other parties. The court excluded evidence of conversations prior to the contract, there being no offer to show that in these conversations there were any false or fraudulent inducements or statements intended to deceive. The court left it to the jury to determine what the parties intended as to the contract. *Held* that a verdict and judgment for plaintiff should be sustained.

Argued Oct. 16, 1902. Appeal, No. 114, Oct. T., 1902, by defendants, from judgment of C. P. No. 1, Phila. Co., June T., 1901, No. 415, on verdict for plaintiff in case of Tunkhannock Ice Company v. Henry G. Franklin et al., trading as American Ice Company. Before RICE, P. J., BEAVER, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Assumpsit for goods sold and delivered.

The facts are stated in the opinion of the Superior Court.

At the trial one of the defendants was asked this question :

" Q. What was said between you and these people, the plaintiffs, prior to the entering into the contract concerning the terms and what was to be done ? "

Objected to. Objection sustained. Exception to defendant. [1]

" Q. What inducement was made by the plaintiff to you to make the contract as you did ? "

Objected to. Objection sustained. [2]

" Q. Did Mr. Brittain (an officer of plaintiff company) say to you prior to the signing of the contract that they would sheath it (the ice house) to protect the house."

148 TUNKHANNOCK ICE CO. *v.* FRANKLIN, Appellant.

Statement of Facts—Opinion of the Court. [22 Pa. Superior Ct.

Objected to. Objection sustained. Exception to defendant. [3]

" Q. If Mr. Brittain (an officer of plaintiff company) had not told you that they had but one outstanding contract for ice, would you have entered into this contract with him ? "

Objection to the form of the question. Objection sustained. Exception to defendant. [4]

" Q. What was the conversation between you ? "

Objected to. Objection sustained. Exception to defendant. [5]

Defendant's points were or follows :

1. The contract between the parties to the cause was an entire one, notwithstanding that the ice was to be shipped and paid for at different times. *Answer :* I decline that point. [6]

2. The plaintiff cannot recover here for a partial performance of an entire contract, but must perform the whole of it, and it is only in case where the defendants have done some act, that prevents the plaintiff from performing its contract, that the plaintiff has a right to recover for partial performance. *Answer :* I decline that point. [7]

Verdict and judgment for plaintiff for $840.96. Defendants appealed.

*Errors assigned* were (1–5) rulings on evidence, quoting the bill of exceptions ; (6, 7) above instructions, quoting them.

*Charles F. Linde*, for appellants.

*Charles H. Edmunds*, with him *Harris S. Sparhawk* and *John Sparhawk, Jr.*, for appellee.

OPINION BY WILLIAM W. PORTER, J., January 20, 1903 :

The plaintiff and defendant companies on February 17, 1901, entered into a written contract whereby the former agreed " to sell to the said party of the second part, all now unsold, being about 12,000 tons of ice." This ice was to be taken and delivered on or before December 10th, from the plaintiff's storehouse. When the contract was made, the ice was stored in a mass of many tons. A sale or sales of some of the mass had previously been made. This was known by the defendants, al-

though there was controversy as to the number of precedent sales.

From time to time, but not with great promptness, the defendants ordered delivery and received ice under their contract. In the fall of 1901, the defendants ascertained that they could obtain no more ice from the plaintiffs. They had then received about 8,650 tons. They owed the plaintiffs for some of the later shipments. For the amount due for these the plaintiffs sued. The defendants replied that they were entitled under their contract to 12,000 tons, that they had not received the full amount and had been compelled to buy ice elsewhere to their damage. They claimed to set all the damages thus incurred against the claim of the plaintiffs and demanded a certificate from the jury for the amount in excess of that claim.

The whole question in the case is whether under the contract between the parties, the defendants were entitled to all of the unsold ice in the house, estimated at 12,000 tons, or to the absolute amount of 12,000 tons.

All the light accessible by testimony was thrown upon the construction of the contract. The defendants said that they were told only of one sale of ice made out of the house before the execution of their contract. The plaintiffs said that the defendants were told of several contracts in advance of their own. Proofs on both sides of this proposition were freely admitted.

Had there been no evidence admitted to elucidate the contract by oral testimony, the meaning might have been adopted by the court as suggested by the plaintiffs, namely, that 12,000 tons were a mere estimated amount and not a guaranteed quantity. The court, however, submitted the whole question to the jury as to what the parties intended when they entered into the relation out of which this controversy arises. The jury found for the plaintiffs and the verdict was entered for the amount of their claim for the ice delivered but for which payment had not been made.

The defendants complain that they were prevented from showing conversations of the parties held before the execution of the written contract. Such evidence was not admissible in the form in which the questions were asked. Further, it was not offered to prove that the inducements alleged to have been

made by the plaintiffs were false or fraudulent or that the statements alleged were intended to deceive. Further yet, all of the testimony alleged to have been erroneously excluded was in fact, adduced elsewhere on the trial in its entirety to the extent to which it was legally offered. We can find no injury done to the defendant by any of the rulings of the court. A fair interpretation of the trial is that the jury believed the construction put by the plaintiffs upon the contract and rendered a verdict consistently therewith.

The judgment is affirmed.